IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD WATSON, | : | CIVIL ACTION |
| Plaintiff, | : | |
| vs. | : | No. 17-1049 |
| LLOYD INDUSTRIES, INC., | : | |
| Defendant. | : | |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS POST-TRIAL MOTION FOR JUDGMENT AS A MATTER OF LAW, A NEW TRIAL, OR, IN THE ALTERNATIVE, A REMITTITUR**

## I. Plaintiff cannot rely upon raw numbers to make out his prima facie case.

The law does not permit Plaintiff to rely upon raw numbers to make out his prima facie case because they are inherently misleading. In his argument that he may, he relies upon *Bruno v. W.B. Saunders Co*., 882 F.2d 760 (3rd Cir. 1989), in which a plaintiff called at trial an expert, who presented statistical studies comparing whether defendant's employees over forty years of age received transfers or promotions in proportion to the percentage of all employees over forty. The defendant argued that these studies were irrelevant because they did not account for the minimum objective qualifications of the jobs into which transfer or promotion was possible. The Third Circuit disagreed, quoting language from a Supreme Court decision that "[n]ormally, failure to include variables will affect the analysis' probativeness, not its admissibility." *Id.* at 766, *quoting Bazemore v. Friday*, 478 U.S. 385, 400, (1986).

The difficulty with Plaintiff's reliance upon *Bruno* is that, in the trial of the instant case, Plaintiff presented no **statistical analysis**. Instead, it presented mere **raw numbers**. Raw

numbers are not probative of the alleged discriminatory motive. *See Ezold v. Wolf, Block, Schorr & Solis-Cohen,* 983 F.2d 509, 543 (3rd Cir. 1993) and other authorities cited on page nine of Defendant's brief.

Plaintiff also cites to *McClung v. Songer Steel Servs., Inc.*, 1 F.Supp.3d 443 (W.D. Pa., 2014). In that opinion, the District Court agreed that the "raw, non-analytical statistics" were not particularly compelling. The court was quick to note that it would have reached the same conclusions in their absence, and it addressed them "only out of completeness to the arguments presented." *Id.* at 458, fn. 14. One can hardly characterize this as a ringing endorsement of the consideration of raw statistics.

The Court should, therefore, agree that Plaintiff has not made out a prima facie case.

## II. Plaintiff has not proved pretext.

In his attempt to prove pretext, Plaintiff repeatedly argues that Defendant violated the collective bargaining agreement (cba). This agreement is a classic red herring. Plaintiff's counsel insists that it requires that seniority be determined on a plant-wide basis and not by department. Plaintiff had more seniority than five other employees, so when defendant laid him off, it breached that agreement.

However, Fred Braker, a union representative, reviewed and researched the layoff and concluded that defendant "was following our cba." [Exh. P-17] Counsel argues that at trial, when confronted with Exh. P-20, Braker backed down from this assertion and "admitted" that Watson was not the lowest in seniority. He insists that Braker's testimony shows that the union was "useless" in determining the truth concerning the layoff. [Pl's brief, p. 21]

This argument flows from a selective reading of the testimony. Braker explained that the language in collective bargaining agreements is "broad" and leaves much to the discretion of management. It allows an employer to determine which employee "can perform the remaining work." [N.T. 11/13/18, p. 116-117] Given the allegations of poor work and consumption of alcohol at lunch, a union grievance was not worth the trouble. In the end, Defendant would prevail.

The real issue is not whether Defendant violated the collective bargaining agreement. The issue was and remains whether Employer properly exercised its discretion to lay off Plaintiff because of his performance and alcohol issues, as it maintains, or whether these considerations were pretexts for racial discrimination. Plaintiff was required to demonstrate that these proffered reasons for its selection of him for layoff were weak, incoherent, implausible, or so inconsistent that a reasonable factfinder could rationally find them unworthy of credence.

In an attempt to prove this, he argues that Defendant had no written record of any discipline. He characterizes Defendant's "no write up" policy as a "big lie" that was unmasked at trial. Instead, he argues, Defendant had a "write up" policy, and its failure to use it bespeaks pretext. However, the law provides that although deviation from a mandatory discipline policy might permit such an inference, a discretionary policy may not. *See, e.g., Matthews v. Euronet Worldwide, Inc.*, 271 F. App'x 770, 776 (10th Cir. 2008) (contrasting a deviation from a mandatory progressive discipline policy, which may provide such an inference, with a discretionary policy, which may not).

Plaintiff also points to what he calls the "Florida Black Workers Lie," arguing that Mr. Lloyd's initial statement that the company's Florida plant employed 80% black employees was unmasked with statistics showing the correct figure to be only 32%. Mr. Lloyd's idle remark at

trial has absolutely no relevance to the issue whether the reasons for Plaintiff's layoff were weak, incoherent, implausible, or so inconsistent that a reasonable factfinder could rationally find them unworthy of credence. Plaintiff never worked in Florida. Defendant never used the racial composition of its Florida workforce as an excuse to terminate Plaintiff. Mr. Lloyd's remark is another red herring.

In further support of his pretext argument, Plaintiff questions why one would permit an employee with alcohol on his breath to operate a 90-ton punch press. The short answer to that question is the one Mr. Lloyd gave at trial, i.e., the press was safe, and there was only a possibility that Plaintiff could blow it up. [N.T., p. 44] Plaintiff was never visibly intoxicated. Rather, he merely had alcohol on his breath. If he had returned from lunch visibly drunk, Lloyd would have sent him home. [*Id.* at 45] Lloyd viewed the repeated smell of alcohol as a subtler problem, and he decided to deal with it by laying Plaintiff off.

This explanation is not so weak, incoherent, implausible, or so inconsistent that a reasonable factfinder would not find it unworthy of belief. Rather, it is a rational response to a problem. Plaintiff may disagree with it, but the Court should not find it to be an outlandish flight of fancy unworthy of any credence.

Plaintiff has not proven pretext. The Court should, therefore, grant Defendant's motion for JMOL.

## III. The Court should set aside or remit the punitive damage award.

The Court should set aside or remit the punitive damage award because it violates Lloyd's right to due process of law under the United States constitution. Plaintiff correctly notes that the Supreme Court has identified five factors to be considered in any determination as to whether a defendant's conduct was reprehensible:

> [1] the harm caused was physical as opposed to economic; [2] the tortious conduct evinced an indifference to or reckless disregard of the health or safety of others; [3] the target of the conduct had financial vulnerability; [4] the conduct involved repeated actions or was an isolated incident; and [5] the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc.*, 499 F.3d 184, 190 (3d Cir. 2007), *quoting State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003)).

Plaintiff incorrectly analyzes these factors. He argues that factor [3], his financial vulnerability, militates in his favor. However, Employer laid him off and, thereby, permitted him to receive unemployment compensation benefits.

His invocation of factor [4], repeated actions, is simply incorrect. He argues that another black employee, Shaun Mathis, was "forced to quit" and yet another one, Shawn Broadnax, was "also laid off under the pretext that he was the lowest in seniority . . ." [Pl's brief, p. 32] However, neither Mr. Broadnax nor Mr. Mathis filed lawsuits, and Plaintiff did not prove that Defendant discriminated against them.

He quotes *Willow Inn, Inc. v. Pub. Serv. Mut. Ins. Co.*, 399 F.3d 224 (3d Cir. 2005), in which the Third Circuit discussed the Supreme Court's decisions in *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003) and *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996). In *Campbell,* Plaintiff State Farm's nationwide claims handling practices on trial. The Supreme Court overturned the resulting verdict, holding that a "defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages. A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business." *State Farm v. Campbell, supra,* 538 U.S. at 422-423. In *Gore,* the Supreme Court held that "evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant

support for an argument that strong medicine is required to cure the defendant's disrespect for the law." *Bmw of N. Am. v. Gore*, *supra,* 517 U.S. at 576-77. The court concluded that no such evidence existed.

These decisions have no applicability to the case at bar. Plaintiff has not proved a series of specific instances of similar conduct in relation to others that Defendant knew or suspected were unlawful. Therefore, factor [4] does not militate in favor of a finding of reprehensibility.

Plaintiff argues that factor [5], intentional malice, trickery, deceit or mere accident, militates in his favor, but he makes no attempt to show such malice or trickery or deceit.

Plaintiff cites *CGB Occupational Therapy, Inc. v. RHA Health Servs.*, 499 F.3d 184 (3d Cir. 2007) as authority for the proposition that a ratio of 6.88 to 1 would withstand constitutional scrutiny. However, that case involved a commercial dispute between nursing homes and providers of therapy. It is obviously dissimilar and of no precedential value.

Plaintiff also cites to *Kunz v. DeFelice*, 538 F.3d 667 (7th Cir. 2008), a police brutality case, which is obviously irrelevant as it involved bodily injury. He cites *Lampley v. Onyx Acceptance Corp.*, 340 F.3d 478 (7th Cir. 2003), which, though an employment discrimination case, is easily distinguishable. The plaintiff in that case was an account manager with a finance company who was fired for making complaints of race discrimination. He demonstrated that employer made scurrilous allegations of poor performance. The Seventh Circuit held that a punitive damage award of some magnitude was required to punish employer for its attempts to publicly discredit the plaintiff. In the case at bar, Defendant made no attempt to publicly discredit Mr. Watson. Rather, it let him go quietly.

In *Gracia v. Sigmatron Int'l, Inc.*, 102 F. Supp. 3d 983, 986 (N.D. Ill. 2015), the District Court found that a jury's punitive award was appropriate where the mere act of retaliatory

discharge, followed up by an effort to hide it using a false paper trail, was the kind of insidious conduct long targeted by civil-rights laws like Title VII. In the case at bar, employer did not create any false paper trail to cover up an act of retaliatory discharge. Instead, it quietly let him go. *Gracia* is, therefore, easily distinguished.

The jury's punitive damage award in the case at bar does not pass constitutional muster. The Court should set it aside altogether or remit it.

**Conclusion**

The Court should, therefore, grant Defendant's post-trial motions.

Respectfully submitted,

Keith J. Cohen, Esquire
Office Court at Blue Bell
585 Skippack Pike, Suite 200
Blue Bell, PA 19422
(o) 267-708-7700
Attorney for Defendant

Dated: January 16, 2019