IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD WATSON, | : CIVIL ACTION |
| Plaintiff, | : |
| vs. | : No. 17-1049 |
| LLOYD INDUSTRIES, INC., | : |
| Defendant. | : |

**DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF POST-TRIAL MOTION FOR JUDGMENT AS A MATTER OF LAW, A NEW TRIAL, OR IN THE ALTERNATIVE, A REMITTITUR**

Per the Court Order dated March 19, 2019, Defendant, Lloyd Industries, Inc., submits this Supplemental Memorandum of Law to address the following issues raised by the Court:

**I.   The impact of the Title VII statutory cap on damages.**

At trial, Plaintiff proceeded under both Title VII of the Civil Rights Act of 1964, i.e., 42 U.S.C. § 2000e-2, and the Civil Rights Act of 1866, 42 U.S.C. § 1981, *et seq*. The jury awarded (1) back pay, (2) compensatory damages for emotional suffering, and (3) punitive damages. Defendant employed fewer than 101 people, [Exh. D-23] so the maximum amount of compensatory and punitive damages that can be awarded for (2) and (3) under Title VII is $50,000[1]. *See* 42 U.S.C. § 1981a(b)(3)(A). Here, the jury awarded compensatory and punitive damages of $750,000 after finding violations of Title VII and 42 U.S.C. § 1981

Although the statutory cap in Title VII does not directly limit awards under Section 1981, many courts have considered it as a relevant civil penalty under the third "guidepost" in *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996). In that case, the Supreme Court identified

---

[1] Compensation for (1) back pay is excluded from the statutory cap. *See* 42 U.S.C. § 1981a(b)(2).

1

three "guideposts" that must be considered to determine if a punitive damage award is so excessive that it violates a defendant's due process rights: (1) the degree of reprehensibility of the defendant's conduct, (2) the ratio of actual harm to punitive damages; and (3) the comparison of punitive damages awarded to the civil or criminal penalties that could be imposed. *See id.* at 575-85.

The third and final guidepost of punitive damage excessiveness is "comparing the punitive damages award and the civil or criminal penalties that could be imposed for comparable misconduct," *Gore*, 517 U.S. at 574-575, which invites deference to "legislative judgments concerning appropriate sanctions for the conduct at issue," *id.* at 583 (*quoting Browning-Ferris Indus. v. Kelco Disposal, Inc.*, 492 U.S. 257, 301, 109 S. Ct. 2909, 106 L. Ed. 2d 219 (1982) (O'Connor, J., concurring in part and dissenting in part)). *See Iannone v. Frederic R. Harris, Inc.*, 941 F. Supp. 403, 414 (S.D.N.Y. 1996) ("This analysis allows the Court to gear the punitive damage award to how seriously society as a whole regards the defendant's conduct.").

In both *Gore* and *State Farm Mutual Automobile Insurance Company v. Campbell*, 538 U.S. 408, (2003), the Supreme Court noted that the maximum fine that could be imposed for the conduct at issue was ten thousand dollars ($10,000.00). *Gore*, 517 U.S. at 584; *State Farm*, 538 U.S. at 415-16. The court found that the two million dollar ($2,000,000.00) award in *Gore* was "substantially greater than the statutory fines available," 517 U.S. at 584, and that the civil fine in *State Farm* was "dwarfed by the $ 145 million punitive damages award," 538 U.S. at 428.

In the case at bar, Plaintiff may recover punitive damages pursuant to his Section 1981 claim. Although there are no comparable civil penalties, the closest analogous claim to Plaintiff's Section 1981 cause of action is his claim under Title VII. Defendant employed fewer than 101 people, [Exh. D-23] so the maximum amount of compensatory and punitive damages that can be

awarded under Title VII is $50,000. *See* 42 U.S.C. § 1981a(b)(3)(A). Here, the jury awarded compensatory damages in the amount of $50,000 and punitive damages of $750,000. The total award of $800,000 is sixteen times the Title VII statutory cap.

However, unlike Title VII, Section 1981 does not have a statutory cap that limits punitive damages. See 42 U.S.C. § 1981a(b)(4). Although the courts have held that the Title VII cap may not be extended to Section 1981 under the guise of interpreting the constitution—*see Williams v. ConAgra Poultry Co.*, 378 F.3d 790, 798 (8th Cir. 2004)—the Supreme Court has instructed courts to consider analogous statutory restrictions in determining the constitutionality of a punitive damages award. *Gore*, 517 U.S. at 583-85.

Authority in the Third Circuit on the subject is scant. In *Zielinski v. SPS Techs. LLC*, No. 10-3106, 2011 U.S. Dist. LEXIS 135187 (E.D. Pa. Nov. 22, 2011), this Court held that although the statutory cap in Title VII does not preclude a higher award, an award of $750,000 in emotional distress and punitive damages, over double the Title VII cap was "**troubling** in light of the similarity between [Plaintiff's] Title VII and § 1981 claims." *Id.* at *32 (emphasis added). "Accordingly consideration of the third guidepost confirms that a significant reduction in punitive damages is appropriate." *Id.* Undersigned counsel has not found any other opinions in this Circuit on point.

However, courts in other circuits have consistently held that the Title VII damage cap should be considered as an analogous statutory restriction. *See Swinton v. Potomac Corp.*, 270 F.3d 794, 820 (9th Cir. 2001) (considering the Title VII damages cap in analyzing the third guidepost in relation to a Section 1981 case); *Bains LLC v. ARCO Prods. Co.*, 405 F.3d 764, 777 (9th Cir. 2005) ("statutory limitation on punitive damages in Title VII cases was an appropriate benchmark for reviewing § 1981 damage awards, even though the statute did not apply to § 1981

cases."); *Jin Ku Kim v. Nash Finch Co.*, 123 F.3d 1046, 1068 (8th Cir. 1997) (same); *Perkins v. Federal Fruit & Produce Co., Inc.*, 2013 WL 2112425, *9; 2013 U.S. Dist. LEXIS 69341, *25 (D. Colo. 2013) (ordering remittitur of $65,000 punitive award to $20,000 because, among other things, award exceeded maximum possible statutory penalty, stating that courts should "defer to prior legislative determinations of what are the appropriate sanctions for certain kinds of conduct").

The District Courts in the Second Circuit have been repeatedly called upon to consider the issue, and they have uniformly held that although it is not appropriate to institute a *de facto* judicial cap on punitive damages awards in Section 1981 lawsuits, when ruling upon a remittitur motion, they "should take the Title VII cap into account." *Kauffman v. Maxim Healthcare Servs.*, 509 F. Supp. 2d 210, 221 (E.D.N.Y. 2007). *See also Rosas v. Balter Sales Co.*, No. 12-CV-6557 (VSB), 2018 U.S. Dist. LEXIS 109332, at *33 (S.D.N.Y. June 29, 2018) (considering the Title VII cap in analyzing the third guidepost in a § 1981 case). Indeed, District Courts in the Second Circuit consider the Title VII cap when ruling on constitutional attacks upon verdicts handed down pursuant to the New York State and New York City Civil Rights laws. *See: Tse v. UBS Fin. Servs.*, 568 F. Supp. 2d 274, 317-18 (S.D.N.Y. 2008) (holding that it is "guided in part" by the Title VII statutory cap); *Thomas v. iStar Fin., Inc.*, 508 F. Supp. 2d 252, 263 (S.D.N.Y. 2007) (holding that "the federal cap nonetheless provides guidance on what is considered an appropriate civil penalty for comparable misconduct."); *Lewis v. Am. Sugar Ref., Inc.*, 325 F. Supp. 3d 321 (S.D.N.Y. 2018) (same); *Lamberson v. Six W. Retail Acquisition*, 98 Civ. 8053 (DC), 2002 U.S. Dist. LEXIS 478 (S.D.N.Y. Jan. 15, 2002) (same).

If an award slightly over double the Title VII cap was "troubling" in *Zielinski, supra.*, a verdict sixteen times that cap in the case at bar is alarming and distressing. When it considers the

third guidepost, this Court should be "guided by" the Title VII cap, which is the appropriate civil penalty for comparable misconduct. In *Zielinski*, this Court remitted 34.5% of the award to an amount which, combined with the reduced award of $100,000 for emotional suffering, exceeded the statutory cap by only $127,500, i.e., 42.5%. In the case at bar, the statutory cap is $50,000. If the Court were to remit the total award for emotional suffering and punitive damages to a sum exceeding the statutory cap by 42.5%—i.e., $71,250—the resulting punitive damage award would be in the amount of $21,250.

Therefore, in response to the Court's third question—"What relevance is that Defendant was also found liable under § 1981?"—Defendant asserts that although Congress has not imposed a cap for damages under § 1981, courts throughout the country have considered the Title VII caps as "guidance" and have reduced damages awarded by juries to amounts within the reasonable ambit of said limits. Defendant asks that this Court do likewise.

## II.   The proper procedure for remitting the verdict.

If a court believes that the verdict amount is excessive and unsupported by the evidence, then it must afford the plaintiff the option of a new trial. If, however, it concludes that the damages award is so excessive that it represents a denial of due process, no new trial need be offered to the plaintiff. "In that case, the award is reduced as a matter of law and there is no interference with the Seventh Amendment right to have a jury make findings of fact." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 716 (3d Cir. 2010), *citing Gore*, 517 U.S. at 585-86.

Defendant has requested that the Court:

(1) <u>Back Pay.</u> Grant a new trial because the jury's award of $49,960 for back pay is against the weight of the evidence;

(2) Emotional Suffering.

 (a) Strike altogether any award for emotional suffering—i.e., enter JMOL on that claim—because Plaintiff's testimony did not show demonstrable emotional distress that is sufficiently articulated without mere conclusory statements;

 (b) Grant a new trial because the jury's award of $50,000 for emotional suffering is against the weight of the evidence;

 (c) Remit the award to a more reasonable sum, consistent with the evidence.

(3) Punitive Damages

 (a) Strike altogether any punitive damage award—i.e., enter JMOL on that claim—because Plaintiff introduced no evidence that Defendant acted with malice or reckless indifference to his civil rights.

 (b) Remit the award of $750,000 to zero[2] or to an amount significantly smaller than the verdict amount on the grounds that it violates Defendant's rights to Due Process of law under the United States constitution.

If the Court were to grant Defendant relief under category (2)(c) and remit the $50,000 emotional suffering award to a more reasonable sum, consistent with the evidence, it would be required to afford Plaintiff the option of a new trial. However, the Court may limit the new trial solely to the issue of damages only if "it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." *Gasoline Prods. Co. v. Champlin Refining Co.*, 283 U.S. 494, 500, 51 S.Ct. 513, 75 L.Ed. 1188 (1931); *see also* 1 *Moore's Federal Rules Pamphlet* § 59.3(5)(a) (Matthew Bender 2015) (A district court may grant a new trial on the issue of damages alone if: "(1) the court finds that the jury's verdict has properly determined the issue of liability; and (2) the issues of liability and damages are not

---

[2] *See, e.g., Spence v. Bd. of Educ. of Christina Sch. Dist.*, 806 F.2d 1198, 1201 (3d Cir. 1986).

inextricably interwoven."); *Wright v. Cacciutti*, No. 3:12-CV-1682, 2015 U.S. Dist. LEXIS 75921, at *61-62 (M.D. Pa. June 11, 2015).

In *Spence v. Bd. of Educ.*, 806 F.2d 1198 (3d Cir. 1986), the Third Circuit agreed that in a trial of a claim for emotional distress, the issues of liability and damages are intertwined because emotional distress damages must be evaluated in light of all the circumstances surrounding the alleged misconduct. *Id.* at 1201, *citing Carey v. Piphus*, 435 U.S. 247, 263, 98 S. Ct. 1042, 1052, 55 L. Ed. 2d 252 (1978) ("Distress . . . is proved by showing the nature and circumstances of the wrong and its effect on the plaintiff."). In addition, in the trial of a punitive damages claim, liability and damages are interwoven because, in order to prove that the defendants' conduct warranted punitive damages, plaintiff would have to present to the jury "all the facts leading up to the allegedly discriminatory conduct." *Spence, supra*, 806 F.2d at 1202.

In the case at bar, similar considerations would preclude a new trial on the issue of damages only. Plaintiff seeks compensation for his alleged emotional distress as well as punitive damages. The evidence supporting both is intertwined with the evidence supporting the proposition that Defendant employer discriminated against him. Therefore, any new trial must be as to all issues.

However, any relief the Court may afford to Defendant under category (3)(b)—i.e., a reduction of the punitive damage award to a smaller sum on Due Process grounds—should **not** be accompanied by an offer of a new trial because "the award is reduced as a matter of law and there is no interference with the Seventh Amendment right to have a jury make findings of fact." *Cortez, supra.*

Any relief under categories (2)(a) and (3)(a) need not be accompanied by an offer of a new trial because a JMOL flows from a finding by the Court that there was no evidence of record

7

to support the verdict. Defendant does not request a remittitur under these categories. Rather, it requests judgment in his favor.

Under categories (1) and (2)(b), Defendant requests a new trial, not a remittitur.

In summary, therefore, the Court need only give Plaintiff the option of a new trial if it remits the $50,000 award for emotional distress on the ground that it is excessive. If the Court remits the punitive damage award on due process of law grounds, it need not offer Plaintiff the opportunity for a new trial.

### III.   Defendant engaged in no behavior justifying a punitive damage award.

As Defendant previously argued, any consideration of the "reprehensibility" factors should lead to the conclusion that there should be no punitive damage award. Even if one could tease out of the evidence presented at trial some modicum of reprehensible conduct, the evidence certainly would not justify an award of $750,000. As the District Court in *MacMillan v. Millenium Broadway Hotel*, 873 F. Supp. 2d 546 (S.D.N.Y. 2012), noted, "cases upholding punitive damage awards of $200,000 or more generally involve discriminatory or retaliatory termination resulting in severe financial vulnerability to plaintiff, repeated incidents of misconduct over a significant period of time, repeated failures to address complaints of discrimination, and/or deceit." *Id.* at 566. The District Court contrasted cases in which plaintiffs were subjected to repeated harassment and discrimination over the course of years of employment with those involving no evidence of violence, deceit, malice or history of misconduct. Punitive damage awards in excess of $200,000 were allowed in cases with evidence such as the following:

1. Where Plaintiff suffered significant psychological and emotion distress from a supervisor's harassing behavior;

2. Where the claim has involved sexist and racist remarks;

3. In circumstances where claimant was berated, intimidated, threatened and punished over a period of many years;

4. Where there has been a summary termination during which an employer cursed and screamed at a plaintiff; and,

5. In situations where a plaintiff was financially vulnerable.

On the other hand, courts have remitted verdicts to figures well below $200,000 in cases in which:

1. There was no violence or threat of violence;

2. No racial slurs or offensive language was used;

3. There was no evidence of repeated misconduct;

4. A decision to terminate was a "transient outburst of pique and frustration," and,

5. Plaintiff suffered a low degree of actual harm.

*MacMillan, supra,* 873 F. Supp. 2d at 564-570 (collecting cases).

In the trial of the case at bar, Plaintiff introduced no evidence of violence or threats of violence. No one subjected him to racial slurs or offensive language. He was not harassed or treated in any untoward fashion. He testified as to some emotional upset, but this was the result of the termination, not any pre-termination behavior. The emotional "harm" that he suffered was the lowest of the "garden variety" discussed in *MacMillan,* which noted that "[w]here a plaintiff offers only sparse evidence of emotional distress, however, courts have reduced such awards to

as little as $10,000." *Id.* at 561 (collecting cases). Plaintiff's testimony was "sparse" at best. He explained that he was "distraught" and "depressed" and felt like a "loser." [N.T. 11/13/18, pp. 137-138] He resorted to "prayer." [*Id.* at 158]

The Court should conclude that the record contains no evidence of malice or recklessness because "a positive element of conscious wrongdoing is always required." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 538 (1999). Plaintiff did not prove any "conscious" wrongdoing. Even if he did, after reviewing the case law, the Court should conclude that the level of reprehensibility is so low that, at most, a nominal punitive damage award is justified.

## CONCLUSION

The Court should, therefore, grant Defendant's post-trial motion and find that the damages awarded by the jury are excessive.

Respectfully submitted,

Keith J. Cohen, Esquire
Office Court at Blue Bell
585 Skippack Pike, Suite 200
Blue Bell, PA 19422
(o) 267-708-7700
Attorney for Defendant